IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD JOSEPH BILINSKI,<br><br>              *Plaintiff*,<br><br>    v.<br><br>WILLS EYE HOSPITAL, et al.,<br>              *Defendant*. | CIVIL ACTION<br>NO. 16-02728 |

**PAPPERT, J.**                                                                September 24, 2019

## **MEMORANDUM**

Ronald Bilinski sued Dr. Samuel Houston, Wills Eye Hospital and Retinovitreous Associates alleging various tort claims under Pennsylvania law, primarily that Houston negligently and with total disregard to his safety operated on his right eye without his consent. Each Defendant moved to dismiss some of Bilinski's claims, and the Court grants in part and denies in part each Motion to Dismiss. Houston and Retinovitreous Associates also filed a motion for summary judgment, which the Court summarily denies without prejudice because it is premature.

I

In June of 2014, Bilinski scheduled an appointment at Wills Eye Hospital ("Hospital").[1] His appointment was with Dr. David Reed "for a follow-up evaluation on his left eye and to get cleared for cataract glasses." (Am. Compl. ¶ 8, ECF No. 138.)

---

[1] Bilinski sued Wills Eye Hospital, Wills Eye Institute, Wills Eye Ophthalmology Clinic, Inc., and Wills Eye Foundation. *See* (Am. Compl. ¶ 2, ECF No. 138). Neither Bilinski nor these Defendants distinguish among the various entities. *See, e.g.*, (*id.*); (Hosp. Mem. in Supp. of Mot. to Dismiss p. 4, ECF No. 140). For simplicity's sake, the Court refers to the various Wills Defendants as "the Hospital."

1

Bilinski says that he had neither experienced nor "mentioned any issues with his right eye to Dr. Reed or any other doctor in the months" before his appointment. (*Id.* at ¶ 20.)

When Bilinski arrived at the Hospital, he met with Dr. Houston instead of Dr. Reed, who was unavailable. *See* (*id.* at ¶¶ 10–11). At that time, "Houston was a Vitreoretinal Procedure Fellow" at the Hospital, (*id.* at ¶ 13), and an employee of Retinovitreous Associates, *see* (*id.* at ¶ 7).[2] Houston had neither treated nor met Bilinski before. *See* (*id.* at ¶ 10–11).

During the appointment, Bilinski allegedly told Houston that "nothing was wrong with his eyes at that time." (*Id.* at ¶ 15.) But after looking at Bilinski's right eye, Houston allegedly "exclaimed, 'Oh, oh, oh,'" (*id.* at ¶ 21), and insisted that Bilinski follow him to another room, *see* (*id.* at ¶¶ 22, 23). When Bilinski declined to do so, Houston "physically grabbed Mr. Bilinski's hand and pulled him into another room." (*Id.* at ¶ 25.) Bilinski claims that Houston then "negligently performed a laser procedure" on his right eye against Bilinski's wishes and without explaining the procedure or its potential complications. (*Id.* at ¶¶ 27–28, 31.)

The procedure allegedly left Bilinski "in physical pain and shaking," (*id.* at ¶ 30), and with deteriorated vision in his right eye, *see* (*id.* at ¶ 36). In fact, Bilinski says that his "right eye [has] never regained the level of vision it had before the procedure." (*Id.* at ¶ 50.) As a result, Bilinski claims that he is blind in his right eye—legally blind

---

[2] At times, Bilinski refers to Retinovitreous Associates as "Mid-Atlantic Retina." *See, e.g.*, (Am. Compl. ¶ 4). The Court follows the parties' lead and treats Retinovitreous Associates and Mid-Atlantic Retina as a single entity that—as the Defendants seem to concede—employed Houston. *See* (Houston & RA Mem. in Supp. of Mot. to Dismiss pp. 7–9, ECF No. 139).

overall because that was his good eye—and suffers lingering physical, mental and emotional harm from the operation. *See* (*id.* at ¶¶ 51–52).

Bilinski's Amended Complaint alleges in Count I that Houston committed a medical battery by performing the "laser procedure on [his] right eye" without consent. (*Id.* at ¶ 56.) Count II contends that Houston's negligence in performing the procedure caused "severe and permanent" harm. (*Id.* at ¶ 60.) Bilinski alleges in Count III that Houston's conduct amounted to gross negligence, and Count IV asserts against Houston a lack-of-informed-consent claim. *See* (*id.* at ¶¶ 62, 66–70). As for the Hospital and Retinovitreous Associates, Bilinski advances theories of agency (Count V) and vicarious liability (Count VI) to hold them liable for Houston's conduct. *See* (*id.* at ¶¶ 71–83). He asks for compensatory and punitive damages on all counts.

Each Defendant moves to dismiss certain parts of the Amended Complaint. They all move to dismiss Bilinski's gross-negligence claim in Count III and his request for punitive damages on all counts. *See* (Houston & RA Mot. to Dismiss ¶ 20, ECF No. 139); (Hosp. Mot. to Dismiss pp. 14–15, ECF No. 140). Retinovitreous Associates and the Hospital move to dismiss the agency and vicarious-liability claims in Counts V and VI as those counts relate to Bilinski's medical-battery and lack-of-informed-consent claims. *See* (*id.* at 9–12); (Houston & RA Mot. to Dismiss ¶ 22). No Defendant moves to dismiss Count II.

II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Though this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint.  *Twombly*, 550 U.S. at 570.

III

A

In Pennsylvania, physicians "must obtain informed consent from a patient before performing a surgical or operative procedure." *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 748 (Pa. 2002) (quoting *Morgan v. MacPhail*, 704 A.2d 617, 619 (Pa. 1997)).  Operating on a patient who has not given her informed consent is actionable as a lack-of-informed-consent claim.  It is also a medical battery, which, unlike traditional battery, requires no proof that the physician intended "to harm the patient." *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 91 (Pa. 2012).  A medical facility ordinarily "cannot be held liable for a physician's failure to obtain informed consent" or the

4

resulting medical battery because it is the physician's duty to obtain informed consent and "a medical facility lacks the control over the [way] the physician performs [that] duty." *Shinal v. Toms*, 162 A.3d 429, 453 (Pa. 2017) (second quotation quoting *Valles v. Albert Einstein Med. Ctr.*, 805 A.2d 1232, 1239 (Pa. 2002)).

Here, however, Bilinski alleges that "Houston was a Vitreoretinal Procedure Fellow" at the Hospital. (Am. Compl. ¶ 13). As a Fellow, Houston's employment status is unclear and may be more akin to that of a trainee or student than an ordinary physician. *Cf. Wills Eye Hosp. v. Pa. Labor Relations Bd.*, 328 A.2d 539, 541 (Pa. 1974) (characterizing "residents and clinical fellows" as trainees or students rather than ordinary employees); *Haskins v. Temple Univ. Heath Scis. Ctr.*, 829 F.2d 437, 438–39 (3d Cir. 1987) (same). If so, the Hospital may have had a duty to control Houston and ensure that he obtained Bilinski's informed consent before performing the operation. To the extent that discovery proves otherwise, the Hospital may renew at summary judgment its argument that, as a medical facility, it cannot be vicariously liable for the medical-battery and lack-of-informed-consent claims against Houston.

The same is not true for Retinovitreous Associates. Bilinski never alleges that Houston's role at Retinovitreous Associates was anything but that of an ordinary physician. Absent any alleged facts suggesting otherwise, Retinovitreous Associates cannot be held liable for Houston's alleged medical battery or failure to obtain informed consent. *See Valles*, 805 A.2d at 1239. The Court dismisses all medical-battery and lack-of-informed-consent claims against Retinovitreous Associates accordingly.

B

Though they share the same basic elements, gross negligence and ordinary negligence are distinct. *See Feleccia v. Lackawanna College*, --- A.3d ----, 2019 WL

5

3917069, at *12 (Pa. Aug. 20, 2019). The key difference is that the former requires "an 'extreme departure' from the standard of care, beyond that required to establish ordinary negligence." *Id.* at *13 (quoting *Royal Indem. Co. v. Sec. Guards, Inc.*, 255 F. Supp. 2d 497, 505 (E.D. Pa. 2003)).

Houston and Retinovitreous Associates argue that Bilinski's "claim for gross negligence should be dismissed because it is not a separate cause of action." (Houston & RA Mot. to Dismiss ¶ 21.) That is incorrect. *See Feleccia*, 2019 WL 3917069, at *13 (holding that a liability waiver precluded claims of ordinary negligence but not "claims of gross negligence"). For its part, the Hospital argues for dismissal because it says that "the Amended Complaint is completely devoid of *any* specific allegations with regard to punitive damages or gross negligence." (Hosp. Mot. to Dismiss pp. 14–15.) Admittedly, Bilinski does not allege that the Hospital itself was grossly negligent, but his Amended Complaint has enough facts to support a gross-negligence claim against Houston. *See, e.g.*, (Am. Compl. ¶¶ 19–30). And the Hospital offers no reason why it is not vicariously liable for Houston's conduct. *See Valles*, 805 A.2d at 1239 ("As a general rule, a master may be held liable for acts of the servant when those acts are committed during the course of his employment and within the scope of his authority."). For those reasons, the Court denies each Defendant's Motion to Dismiss Count III.

C

Bilinski seeks punitive damages on all counts. *See* (Am. Compl. at p. 14). Punitive damages are available to remedy a "health care provider's willful or wanton conduct or reckless indifference to the rights of others." Pa. Stat. and Cons. Stat. § 1303.505(a) (2002). "A showing of gross negligence is insufficient to support an award

6

of punitive damages." *Id.* § 1303.505(b). For "a health care provider who is only vicariously liable for the actions of its agent that caused the injury," punitive damages are unavailable unless the provider "knew of and allowed the conduct by its agent that resulted in the award of punitive damages." *Id.* § 1303.505(c).

The Amended Complaint alleges facts that, if proved, support an award of punitive damages against Houston but not the Hospital or Retinovitreous Associates. Bilinski alleges that Houston forcibly pulled him into another room and then, without explanation or consent, operated on a well-functioning eye with a machine lacking the proper lens. *See* (Am. Compl. ¶¶ 19–30). Taken as true, those allegations allow a reasonable inference that Houston acted with reckless indifference to Bilinski's rights and well-being. As to the medical facilities, however, Bilinski neither alleges nor offers any facts suggesting that they "knew of and allowed" Houston's conduct. Pa. Stat. and Cons. Stat. § 1303.505(c) (2002).

IV

The Court denies Houston and Retinovitreous Associates' Motion for Summary Judgment without prejudice. Granting summary judgment before discovery is complete "is rarely justified." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015). It is entirely unjustified here. Discovery has not even begun, and, in any event, a lack of expert testimony is not necessarily fatal to any of Bilinski's claims.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

7