IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD JOSEPH BILINSKI,

                    *Plaintiff,*

    v.

WILLS EYE HOSPITAL, et al.,

                    *Defendants.*

CIVIL ACTION
NO. 16-2728

**PAPPERT, J.**                                                **September 1, 2021**

## MEMORANDUM

Ronald Bilinski sued Wills Eye Hospital, Retinovitreous Associates, Limited doing business as Mid Atlantic Retina (MAR) and Dr. Samuel K. Houston III claiming injury from a 2014 eye appointment with Dr. Houston.  MAR and Houston move for summary judgment on all claims against them.  After thoroughly reviewing the briefing and record evidence and holding oral argument, the Court grants the Motion in part and denies it in part for the reasons that follow.

I

A

On June 16, 2014, Bilinski met with Houston, then a first-year vitreoretinal surgery fellow, for an eye appointment at Wills Eye.  *See* (Pl.'s Resp. Ex. U, June 16, 2014 Visit Summary, ECF 204-21); (Pl.'s Resp. Ex. D, Houston Dep. Tr. 25:2–6, ECF 204-4); (Pl.'s Resp. Ex. G, Fellowship Webpage, ECF 204-7).  MAR ran Houston's

fellowship program, but Houston provided retinal care for Wills Eye patients as part of the fellowship.  (Pl.'s Resp. Ex. A, Sivalingam Dep. Tr. 32:3–4, 49:2–7, ECF 204-1.)[1]

Bilinski says he made this appointment to have his left eye evaluated after a vitrectomy and to receive clearance for cataract glasses.  *See* (Pl.'s Stmt. of Disputed and Undisputed Material Facts ¶¶ 23–26, ECF 203-1).  Houston, however, did not prescribe him glasses or examine only his left eye.  (*Id.* at ¶¶ 30, 38.)  Instead, Houston examined both of Bilinski's eyes.  (*Id.* at ¶ 30.)  After doing so, he grabbed Bilinski by the shirt and pulled him close, told him he needed to undergo laser treatment because his "eyes [were] going to blow up" and then "looked up at the ceiling and started laughing."  (Pl.'s Resp. Ex. H, Bilinski Dep Tr. 85:10–16, 91:18–20, ECF 204-8.) Bilinski refused the treatment, but then "Houston physically grabbed [him] and led him down a hallway to another room" and performed a panretinal photocoagulation (PRP) laser procedure on Bilinski's right eye.  (Pl.'s Stmt. of Disputed Material Facts Precluding Summary Judgment ¶¶ 4, 6, ECF 203-1.); (Pl.'s Resp. Ex. H at 85:17–22, 92:3–19.)  Houston did not consult an attending physician before the PRP, and he performed the procedure without supervision.  (Pl.'s Stmt. of Disputed and Undisputed Material Facts ¶ 36.)

Bilinski claims he was never advised about the risks of the PRP and "was forced into the procedure against his will."  (Pl.'s Stmt. of Disputed Material Facts Precluding

---

[1]      The fellowship director explains "Mid Atlantic Retina is the pure entity that runs the fellowship and the educational portion is done through the continuing medical education at Wills Eye Hospital."  (Pl.'s Resp. Ex. A at 71:9–13.)  According to another former fellow, "fellow clinic work that was done seeing patients . . . was done under like Wills Eye Hospital electronic medical records and the billing was done through the electronic medical record associated with that program.  And then . . . when we did procedures in the fellow clinic . . . those were done under the umbrella of Mid Atlantic Retina."  (Pl.'s Resp. Ex. C, Reed Dep. Tr. 22:20–23:2, ECF 204-3.)

Summary Judgment ¶¶ 5, 7.)  He says his appointment with Houston traumatized him, caused deep distrust of doctors and medical institutions and resulted in emotional distress, mental anguish and pain and suffering.  (Aug. 18, 2021 Hr'g Tr. 55:14–18, 57:5–58:16, ECF 224.)

B

Bilinski's brother, who joined Bilinski for the beginning of the appointment but not the PRP, corroborates Bilinski's account of Houston's conduct before he performed the procedure, (Pl.'s Resp. Ex. S., D. Bilinski Dep. Tr. 69:14–70:21, 74:5–22, 75:9–76:14, ECF 204-19), but other record evidence leaves room for dispute about Bilinski's full story.  As an initial matter, a doctor who met with Bilinski in April of 2016 testified he gave Bilinski an eyeglass prescription then, and Defendants say this shows being cleared for glasses was not the purpose of Bilinski's June 16 appointment.  *See* (Pl.'s Resp. Ex. B, Bailey Dep. Tr. 37:11–38:12, ECF 204-2); (Defs.' Resp. to Pl.'s Stmt. of Disputed and Undisputed Material Facts ¶¶ 24–26).  Houston maintains he has never grabbed a patient by the shirt and dragged him down a hallway or performed a laser procedure on a patient who refused it,  (Pl.'s Resp. Ex. D at 120:23–121:10), though he does not remember Bilinski as a patient or what he discussed with Bilinski on June 16, 2014, (Pl.'s Stmt. of Disputed and Undisputed Material Facts ¶ 39); (Pl.'s Resp. Ex. D at 39:10–40:4).

Other record evidence further shows that Bilinski may have ultimately consented to the PRP.  Bilinski testified that during the procedure he instructed Dr. Houston to "keep going" and "fix" his eye, (Defs.' Reply Ex. 10, Bilinski Dep. Tr. 60:7–10, ECF 208-10), and a phone message record says Bilinski called Wills Eye on June 20,

3

2014 and said he "let" Houston perform the PRP, (Pl.'s Resp. Ex. R, June 20, 2014 Telephone Message 4, ECF 204-18).  Houston's visit summary for Bilinski says he discussed risks, benefits, alternatives and indications with Bilinski ahead of performing the PRP.  (Pl.'s Resp. Ex. U, June 16, 2014 Visit Summary, ECF 204-21); *see also* (Pl.'s Resp. Ex. Y, June 16, 2014 Procedure Notes, ECF 204-25 (saying risks of PRP explained)).  And both Houston and Defendants' medical expert claim patient cooperation is required to perform a PRP because "any significant movement or resistance from the patient would make it impossible to accurately aim and focus the laser on the retina."  (Defs.' Mot. for Summary Judgment Ex. L, Eliott Rpt. 4, ECF 193-14); (Pl.'s Resp. Ex. D, Houston Dep. Tr. 121:11–15).

MAR also has a consent form signed with Bilinski's name and dated June 16, 2014 that manifests agreement to the performance of laser photocoagulation on Bilinski's right eye.  *See* (Pl.'s Resp. Ex. V, ECF 204-22).  Bilinski contends the form is "fatally flawed" because it does not contain a time stamp demonstrating when he purportedly gave consent or list fellows, including Houston, as individuals who could perform the procedure.  *See* (Pl.'s Stmt. of Disputed and Undisputed Material Facts ¶¶ 32–34); (Pl.'s Resp. Ex. V); (Pl.'s Resp. to Mot. for Summary Judgment 19).  He also says he does not remember signing it and that his signature is forged, *see* (Pl.'s Stmt. of Disputed and Undisputed Material Facts ¶ 4); (Pl.'s Resp. Ex. H at 95:12–96:13), but Defendants' handwriting expert opines the signature is Bilinski's, (Defs.' Reply Ex. 20, Detwiler Rpt. 3, ECF 208-20).

C

The record further suggests it is unremarkable that Houston performed the PRP without supervision or consulting an attending physician.  Like all MAR retinal fellows, Houston was a licensed, board-eligible, "full-fledged ophthalmologist[]" who "r[a]n the [Wills Eye Ophthalmology] clinic independent just like . . . any . . . attending does" when he met with Bilinski.  *See* (Defs.' Mot. for Summary Judgment Ex. Q, Sivalingam Dep. Tr. 77:12–16, ECF 193-19); (Pl.'s Ex. F, Mehta Dep. Tr. 36:4–12); *see also* (Defs.' Mot. for Summary Judgment Ex. M, Eliott Dep. Tr. 61:7–23).  He was credentialed and permitted to perform in-office procedures like PRPs unsupervised without informing or later reporting to an attending physician.  *See* (Pl.'s Resp. Ex. D at 25:18–26:7); (Defs.' Mot. for Summary Judgment Ex. P, Houston Privileges Approved by Thomas Jefferson University Hospital, ECF 193-18 (approving Dr. Houston to perform retina laser procedures)); (Defs.' Reply Ex. 2, Sivalingam Dep. Tr. 62:19–64:10, ECF 208-2).  According to Houston and Defendants' medical expert, fellows are fully trained to independently perform PRPs.  *See* (Defs.' Mot. for Summary Judgment Ex. N, Houston Dep. Tr. 24:8–13, 108:18, 109:6, ECF 193-15); (Defs.' Mot. for Summary Judgment Ex. L, Eliott Rpt. 4, ECF 193-14) (("A first-year retina fellow (or a comprehensive ophthalmologist in their first year of practice) is highly proficient at performing various types of laser procedures for a variety of ophthalmic conditions (including PRP . . . ) and does not need supervision for this skill."); (Defs.' Mot. for Summary Judgment Ex. M at 92:25–93:8); (Defs.' Reply Ex. 21, Eliott Dep. Tr. 93:24–94:9, ECF 208-23).  Defendants' expert also believes fellows are "highly proficient at obtaining informed consent and

do[] not need supervision for this task."  (Defs.' Mot. for Summary Judgment Ex. L at 4.)

Houston estimates he performed several hundred PRPs during his residency, (Pl.'s Resp. Ex. D at 24:11–13), and at least one hundred unsupervised as a fellow before he met with Bilinski, (*id.* at 24:18–25, 25:7–12, 27:6–13).  He says not only could fellows perform PRPs unsupervised, they themselves supervised residents performing this procedure.  *See* (*id.* at 23:16–24:7); (Defs.' Mot. for Summary Judgment Ex. N, Houston Dep. Tr. 107:7–23, 108:18–22).

### D

Bilinski sued Houston for medical battery and lack of informed consent and seeks to hold Wills Eye and MAR liable under theories of agency and vicarious liability.[2]  (Am. Compl. ¶¶ 59–63, 71–91.)

### II

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).  The movant bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Conoshenti v. Pub. Serv.*

---

[2]     Bilinski also brought claims against Houston for medical negligence and gross negligence, and against MAR and Wills Eye for agency and vicarious liability for the same, but counsel withdrew those claims with prejudice at oral argument.  (Aug. 18, 2021 Hr'g Tr. 3:20–4:12.)

As alleged in the Amended Complaint, Bilinski's agency claim could be interpreted as confined to MAR's purported responsibility for Houston's negligence.  *See* (Am. Compl. ¶¶ 76–84).  At oral argument, however, the parties never confined the claim in that way and instead discussed it in the context of all remaining counts.

*Elec. & Gas Co.*, 364 F.3d 135, 145 (3d Cir. 2004), holding modified by *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009) (quoting *Celotex Corp, v. Catrett*, 477 U.S. 317, 323 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under the governing law.  *Id.*  A mere scintilla of evidence supporting the nonmoving party will not suffice for a court to deny summary judgment.  *Id.* at 252.  Rather, the nonmovant must "set forth specific facts showing there is a genuine issue for trial." *Id.* at 256.

At summary judgment, a court may consider any material in the record that may be admissible at trial.  *See* Fed. R. Civ. P. 56(c); *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387–88 & n.13 (3d Cir. 1999).  In doing so, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (citation and quotation marks omitted).  But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).  Nor may a court make credibility determination or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

III

Defendants contend Bilinski's claims against Houston fail because Pennsylvania law requires him to support them with expert testimony and he has not produced an expert witness.  *See* (Mem. in Support of Mot. for Summary 12–16, ECF 193-2); (Aug. 18, 2021 Hr'g Tr. 20:15–21:3, 99:12–24).  Accordingly, MAR cannot be held vicariously

liable for underlying theories of liability that Bilinski cannot prove.  And in any event, medical battery and failure to obtain informed consent are not the types of conduct for which MAR can be held vicariously responsible.  (Mem. in Support of Mot. for Summary 21–24.)  Defendants further contend that because Bilinski cannot prove he suffered any actual damages, he cannot recover punitive damages on his claims.  (Mem. in Support of Mot. for Summary 25.)

Indeed, Bilinski chose not to retain a medical expert.  The absence of expert testimony is fatal to some, but not all, of his claims.

A

A medical battery occurs when a surgical or operative procedure is performed without a patient's consent.  *See Cooper ex rel. Cooper v. Lankenau Hosp.*, 616 Pa. 550, 51 A.3d 183, 191 (Pa. 2012).  "[A] plaintiff in a medical battery/lack-of-consent case need not prove that the defendant . . . performed the unauthorized operation with the intent to harm the patient."  *Id.*  Additionally, "[t]here need be no physical injury, but only some contact; the matter of permission goes to the quality of the contact, and consent to being touched is a defense."  *Montgomery v. Bazaz-Sehgal*, 568 Pa. 574, 798 A.2d 742, 749 (Pa. 2002) (internal quotations and citation omitted).

It "goes without citation that as a part of a tort action the plaintiff must prove that the injury . . . for which recovery is sought was caused by the tortious act or force of the tortfeasor," *Maliszewski v. Rendon*, 374 Pa. Super. 109, 542 A.2d 170, 172 (Pa. Super. Ct. 1988), and expert testimony is required to establish a causal connection between an injury and a purported medical battery when it is not "so readily apparent that a layman could diagnose" it, *Montgomery*, 798 A.2d at 751 (quoting *Florig v.*

8

*Sears,, Roebuck & Co.*, 388 Pa. 419, 130 A.2d 445, 447 (Pa. 1957)).  But "[t]he law is well established that expert testimony is not necessary where the cause of an injury is clear and where the subject matter is within the experience and comprehension of lay jurors."  *Id.* at 752.

There is no dispute that Houston performed a PRP procedure on Bilinski's eye, and there remains enough of a genuine dispute of fact, *see infra* Part I.B, to leave for the jury the question of whether or not Bilinski consented to it.  Bilinski contends that if a jury finds he did not provide consent, they can ascertain the connection between the unwanted procedure and his pain and suffering and emotional distress without an expert's assistance.  (Aug. 18, 2021 Hr'g Tr. 59:1–61:1.)  He is partially correct.

Bilinski would need an expert to show the alleged battery caused his pain and suffering because whether Houston's conduct would have resulted in those injuries would not be "so readily apparent" to the ordinary layperson.  But Bilinski does not need expert testimony to demonstrate a causal connection between the battery and his purported emotional injuries as they were refined at oral argument.[3]  "It is within the

---

[3]      This litigation began in June of 2016.  Until the August 18, 2021 oral argument, Bilinski primarily claimed Houston blinded him in his right eye.  *See, e.g.*, (Am. Compl. ¶¶ 56, 58, 68–69, ECF 173); (Pl.'s Stmt. of Disputed Material Facts Precluding Summary Judgment ¶¶ 15, 18); (Pl.'s Resp. to Defs.' Mot. for Summary Judgment 9, ECF 203).  He claimed past and future medical expenses and loss of earning capacity for this injury and alleged he became unable to care for himself because of it.  *See, e.g.*, (Am. Compl. ¶ 58); (Pl.'s Resp. to Defs.' Mot. for Summary Judgment 9); (Pl.'s Resp. Ex. S, D. Bilinski Dep. Tr. 93:6–7, ECF 204-19).  He also said he suffered numerous emotional injuries derivative of his physical injuries, such as "los[ing] his life's passion: his artwork" and deteriorating mental health due to his limitations.  *See, e.g.*, (Am. Compl. ¶¶ 57–58); (Pl.'s Stmt. of Disputed Material Facts Precluding Summary Judgment ¶¶ 13–14 ); (Pl.'s Resp. to Defs.' Mot. for Summary Judgment 9).  He pursued these damages claims to a point where his counsel engaged two registered nurses to prepare life care plans identifying Bilinski's "current and future needs with associated costs" because of his right eye blindness.  *See generally* (Defs.' Mot. for Summary Judgment Ex. E, ECF 193-7).  In addition to these more specifically defined damages, Bilinski has generally claimed he has experienced "mental anguish" and "pain and suffering" relating to all Defendants' conduct.  *See* (Am. Compl. ¶¶ 35, 58, 63).

range of comprehension of jurors whether emotional injuries" such as distress and distrust of doctors "might reasonably be attributable" to being dragged into an operating room and forced to undergo an unwanted procedure. *See Montgomery*, 798 A.2d at 751. If Bilinski can convince a jury of Houston's liability and prove he suffers from the emotional injuries he has alleged, he can recover for them. *See id.* at 750 ("It has long been the law that damages for emotional injuries are compensable, even in cases not involving negligence, where there is some evidence of physical contact or injury, even if the physical contact or injury is trivial in nature.").

Defendants' Motion is accordingly granted in part and denied in part with respect to Bilinski's medical battery claim. Bilinski can proceed with this claim against Houston, but only to recover for his alleged emotional injuries as counsel described them during oral argument.

## B

Bilinski cannot, however, proceed with his lack of informed consent claim because he needs an expert to prove it. In Pennsylvania, physicians are duty-bound to obtain a patient's informed consent before conducting certain procedures, such as surgery, except in emergencies. *See* 40 P.S. § 1303.504(a). A physician is liable to his patient for performing a procedure without informed consent if:

> (1) the physician fails to disclose any risk in the recommended treatment, or the existence of any alternative method of treatment, that a reasonable person would deem material in deciding whether to undergo the recommended treatment; (2) the patient would have forgone the recommended treatment had he or she known of the undisclosed information; and (3) as a result of the recommended treatment, the patient actually suffers an injury the risk of which

---

At oral argument, counsel drastically curtailed the damages their client seeks. *See* (Aug. 18, 2021 Hr'g Tr. 55:14–18, 57:5–58:16). The abrupt abandonment of much of the alleged damages is an apparent effort to preserve as much of the case as possible by focusing on the claims which arguably may not need to be supported by expert testimony.

was undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment.

*Neal by Neal v. Lu*, 365 Pa. Super. 464, 530 A.2d 103, 111 (Pa. Super. Ct. 1987).

To prove lack of informed consent a plaintiff must show a physician failed to advise him "of material facts, risks, complications and alternatives to surgery which a reasonable man in the patient's position would have considered significant in deciding whether to have the operation." *Gouse v. Cassel*, 532 Pa. 197, 615 A.2d 331, 334 (Pa. 1992). To prove damages, a plaintiff must show his injury was an undisclosed risk of the procedure caused by the procedure. *See, e.g.*, *Neal by Neal*, 530 A.2d at 478; *Maliszewski* 542 A.2d at 172–73; *cf. Jozsa v. Hottenstein*, 364 Pa. Super. 469, 528 A.2d 606, 608 (Pa. Super. Ct. 1987) ("The law is very clear that once expert medical testimony establishes that there was a risk of any nature to the patient that he or she was not informed of, and after surgery the patient suffers from *that* undisclosed risk, it is for the jury to decide whether the omission was material to an informed consent.") (emphasis added).

Pennsylvania's Medical Care Availability and Reduction of Error (MCARE) Act requires expert testimony to establish that an at-issue procedure falls within the purview of a lack of informed consent claim and "to identify the risks of that procedure, the alternatives to that procedure and the risks of these alternatives." 40 P.S. § 1303.504(c). The Pennsylvania Supreme Court has said "the jury must be supplied with expert information as to the nature of the harm attendant to [a] procedure, and the probability of that harm occurring" in order to determine what information would be material to a patient for purposes of informed consent. *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1008 (Pa. 1992); *see also Levy v. Jannetta*, 423 Pa. Super. 384, 621

A.2d 585, 587 (Pa. Super. Ct. 1992) ("It is beyond dispute that medical expert testimony is necessary in an informed consent action to establish that the condition suffered was a known risk of a medical procedure at the time the procedure was performed."); *Festa v. Greenberg*, 354 Pa. Super. 346, 511 A.2d 1371, 1376 (Pa. Super. Ct. 1986) (expert testimony "is required to establish the existence of risks in a specific medical procedure, the existence of alternative methods of treatment and the existence of risks attendant with such alternatives") (emphasis removed).  Expert testimony is also required to show a non-obvious causal connection between a lack of informed consent and a suffered injury.  *See Maliszewski*, 542 A.2d at 172.

Without a medical expert, Bilinski cannot establish that the PRP was a procedure for which informed consent was necessary, the risks of and alternatives to a PRP procedure or that his purported injuries are risks of a PRP.  Accordingly, summary judgment is granted in Houston's favor with respect to Bilinski's lack of informed consent claim.

## C

Defendants' Motion fares the same with respect to Bilinski's agency and vicarious liability claims against MAR as it does for Bilinski's underlying claims against Houston.  The Motion is denied as to Bilinski's claims against MAR relating to Houston's purported medical battery and granted as to Bilinski's claims against MAR relating to Houston's purported failure to obtain his informed consent.[4]

---

[4]     Defendants' Motion is also granted in part and denied in part with respect to punitive damages, consistent with the Court's rulings on the rest of Bilinski's claims.  Bilinski cannot continue to pursue punitive damages against Defendants grounded in a lack of informed consent claim.  *See Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989) ("Since punitive damages are an element of damages arising out of the initial cause of action, if that cause of action is dismissed, the punitive damages which are incident to actual damages cannot stand.").  If the case

i

Under Pennsylvania law, an employer "may be vicariously liable for intentional acts of an employee 'committed during the course of and within the scope of the [employee's] employment.'" *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009) (quoting *Fitzgerald v. McCutcheon*, 270 Pa. Super. 102, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979)). The Pennsylvania Supreme Court "has adopted the Restatement [(Second) of Agency's] scope of employment analysis in vicarious liability cases." *Justice v. Lombardo*, 653 Pa. 588, 208 A.3d 1057, 1068 (Pa. 2019). According to the Restatement, employee conduct is within the scope of employment if:

> (1) it is of a kind [the employee] is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the [employer]; and (4) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

Restatement (Second) of Agency § 228(1) (1958); *see also Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 365 (E.D. Pa. 2020) (quoting *Spitsin v. WGM Transp., Inc.*, 2014 Pa. Super. 162, 97 A.3d 774, 778 (Pa. Super. Ct. 2014)). "Where . . . the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law." *Fitzgerald*, 410 A.2d at 1272.

On this record, a jury could conclude MAR is vicariously liable for Houston's purported medical battery. The evidence shows that when Houston performed the PRP on Bilinski he was engaging in a treatment he often performed as part of his employment during work hours for the purpose of caring for a Wills Eye patient.

---

proceeds to trial, the Court will at an appropriate time evaluate the propriety of instructing the jury on punitive damages for the medical battery claim.

Defendants argue Houston's alleged conduct of forcibly grabbing Bilinski and performing an unwanted procedure on him was not expected or foreseeable by MAR (Aug. 18, 2021 Hr'g Tr. 43:1–10), but a reasonable jury could conclude otherwise. *Cf. Brownstein v. Gieda*, 649 F. Supp. 2d 368, 371–72, 377 (M.D. Pa. 2009) (finding a hospital could be held vicariously liable for hospital staff purportedly assaulting and battering a patient by restraining him, tying him to a gurney and forcibly drawing his blood despite his refusal of treatment and continuous physical and verbal resistance).

ii

A reasonable jury cannot, however, find MAR liable on Bilinski's lack of informed consent claim. "A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor[,]" and "termination of the claim against the agent extinguishes the derivative claim against the principal." *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380, 1383 (Pa. 1989); *see also Mathews v. Lancaster Gen. Hosp.*, 883 F. Supp. 1016, 1026 (E.D. Pa. 1995) ("a claim of vicarious liability depends upon the life of the claim from which it derives"). Because Houston has been granted summary judgment on Bilinski's lack of informed consent claim, Bilinski's agency and vicarious liability claims derivative of lack of informed consent cannot survive.[5]

---

[5]   Moreover, "[b]ecause obtaining informed consent results directly from the duty of disclosure, which lies solely with the physician, a hospital cannot be liable for a physician's failure to obtain informed consent." *Shinal v. Toms*, 640 Pa. 295, 162 A.3d 429, 453 (Pa. 2016); *see also Valles v. Albert Einstein Med. Ctr.*, 569 Pa. 542, 805 A.2d 1232, 1329 (Pa. 2002) ("a battery which results from a lack of informed consent is not the type of action that occurs within the scope of employment"); *Munsif v. Jefferson Hosp.*, Nos. 15-5649, 15-6190, 2016 WL 4123944, at *5 (E.D. Pa. Aug. 2, 2016) ("[a]s Jefferson is a hospital, it cannot be directly or vicariously liable for informed consent violations by physicians who performed Munsif's surgery").

Bilinski argues MAR can be held responsible for Houston's failure to obtain informed consent because he is a fellow and not an attending physician, *see, e.g.*, (Aug. 18, 2021 Hr'g Tr. 78:24–79:20,

An appropriate Order follows.

BY THE COURT:

_ */s/ Gerald J. Pappert* _
GERALD J. PAPPERT, J.

---

88:18–25), but he provides no authority for the proposition that fellows are regarded differently in the vicarious liability context.  The undisputed record evidence shows Houston was fully trained and credentialed to perform PRPs and obtain informed consent for those procedures without supervision and without consulting an attending physician.  *See, e.g.*, (Aug. 18, 2021 Hr'g Tr. 77:14–17, 80:3–12, 88:1–14).